## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JONATHAN FRANKEL, Derivatively on Behalf of GROUPON, INC., | ) ) ) | Case No. 1:21-cv |
| Plaintiff, | ) ) ) | **PUBLIC VERSION** **Filed October 5, 2021** |
| v. | ) ) | |
| MELISSA THOMAS, THEODORE J. LEONSIS, ERIC LEFKOFSKY, PETER J. BARRIS, ROBERT J. BASS, DEBORAH WAHL, RICHARD WILLIAMS, MICHAEL ANGELAKIS, and ANN ZIEGLER, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| -and- | ) ) | |
| GROUPON, INC., a Delaware Corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | DEMAND FOR JURY TRIAL |

### VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECURITIES LAW, BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT

Plaintiff, by his attorneys, submits this Verified Stockholder Derivative Complaint for Violation of Securities Law, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff, which are based on personal knowledge. This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources. Additionally, plaintiff's allegations are based, in part, on his review of the books and records produced by Groupon, Inc., ("Groupon" or "the Company"), all of which are incorporated by reference in this complaint, in response to his demand to inspect certain documents pursuant to 8 *Del. C.* §220 ("Section 220").

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant Groupon against certain of its officers and directors for violation of securities law, breach of fiduciary duty, waste of corporate assets, unjust enrichment. These wrongs resulted in hundreds of millions of dollars in damages to Groupon's reputation, goodwill, and standing in the business community. Moreover, these actions have exposed Groupon to hundreds of millions of dollars in potential liability for violations of state and federal law.

2.      Groupon is an international online business that offers consumers a marketplace to purchase goods and services on the Company's websites and mobile applications. The Company's business operations are comprised of three distinct categories: (i) Local, which offers consumers with various experiences, such as: (a) events and activities; (b) health and beauty; (c) food and drink; (c) home and garden; (e) and automotive; (ii) Goods, which directly sells

merchandise inventory to consumers, such as electronics, sporting goods, jewelry, toys, household items, and apparel, and indirectly sells merchandise inventory through third-party merchants that use Groupon's marketplaces; and (iii) Travel, which provides consumers with various offers to hotels, airfare, and package deals.

3.    Starting in 2019, Groupon's business operations were facing serious problems relating to: (i) a decline in its active customer base; (ii) a substantial reduction in its website traffic; and (iii) declining profits from its Goods category.  In light of these problems, the Company implemented a loyalty program initiative in early 2019 called Groupon's Select program.  The Company's Select program offered North American customers various discounts and free shipping in exchange for a $4.99 monthly premium.  Despite declining gross profits throughout 2019, Company continued to operate in the Goods category because Groupon publicly reported that it served as an "engagement driver" to the Company's more profitable Local category.

4.    Prior to commencing this present action and pursuant to Section 220, plaintiff served a books and records inspection demand on the Company on September 9, 2020.  Plaintiff received a limited production from the Company in November 2020, which comprised of certain Board of Directors (the "Board") and committee materials.  Plaintiff's review of these materials uncovered that the Individual Defendants' (as defined herein) internal assessment, review, and monitoring of the Company's Goods category, Select program, and reported adjusted earnings before interest, taxes, depreciation, and amortization ("AEBITDA") for 2019 revealed startling nonpublic information that contradicted Groupon's public statements in 2019 and 2020.  Thus, the Company's public statements in 2019 and 2020 regarding its: (i) Goods category; (ii) its Select program; and (iii) its overall financial well-being, including Groupon's projected

AEBITDA of $270 million for 2019, were false, misleading, and omitted material information from the investing public for the reasons described herein.

5.        Specifically, the Individual Defendants made, authorized, or allowed public statements in 2019 and 2020 that were misleading, deceptive, and omitted material information regarding the Company's Goods category that defendants knew since January 2019: (i) ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "

6.        In addition, the Individual Defendants made, authorized, or allowed public statements in 2019 and 2020 that were misleading, deceptive, and omitted material information regarding the Select program that the Individual Defendants immediately knew or should have known was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that the Select program "over-indexed" the less profitable Goods category since mid-2019.

7.        The Director Defendants (as defined herein) also made, authorized, or allowed public statements in 2019 and 2020 that were misleading, deceptive, and omitted material information regarding the Company's reported AEBITDA of $270 million for 2019 ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8.        Despite this advanced knowledge, the Individual Defendants made or allowed the Company to continue to misleadingly report the opposite, claiming that: (i) the Goods category was a "engagement driver" that drove customers to its Local category; (ii) the Select program

was operating profitably, while omitting that: (a) ████████████████████████████
████████████████ and (b) the Select program's discounts and free shipping were
disproportionately utilized for the already struggling Goods category immediately once Groupon
expanded the Select program to its Goods category; and (iii) ████████████████████
████████████████████████████. Defendants Theodore J. Leonis
("Leonis"), Eric Lefkofsky ("Lefkofsky"), Peter J. Barris ("Barris"), Robert J. Bass ("Bass"),
and Deborah Wahl ("Wahl") also approved and signed the Company's 2019 Annual Report that
omitted material information regarding Groupon's internal discussions that had ████████
████████████████████████████. Moreover, the Individual
Defendants omitted from Groupon's SEC filings for 2019 that the Company ████████
████████████████████████████████████
████████████████.

9.      On February 18-19, 2020, the Company finally disclosed the truth that Groupon:
(i) planned on exiting the failing Goods category in 2020; (ii) would no longer accept new
members for its Select program, which was not operating profitably, and "over-indexed" the low
profit margin Goods category starting in the second half of 2019; and (iii) had failed to meet its
reported AEBITDA for 2019 of $270 million by $43 million (nearly 16%), with Groupon's
actual AEBITDA reported at $227 million for 2019.

10.     In light of these alarming and sudden disclosures, Groupon's stock price dropped
dramatically.  The Company's share price of $3.05 per share on February 18, 2020, plummeted to
close at $1.70 per share on February 19, 2020.  In one day, Groupon's stock price had lost $1.35
per share—a whopping 44%—and erased more than $765 million in market capitalization.
However, defendants Lefkofsky and Barris, who had material, nonpublic information regarding

these impending disclosures, sold over $4.6 million worth of Groupon stock that they personally held while the Company's stock price was artificially inflated.

11.     Defendants Leonsis, Lefkofsky, Barris, Bass, and Wahl, also filed the Company's 2020 Proxy Statement (the "2020 Proxy") on April 28, 2020, with the SEC that omitted material information regarding Groupon's ineffective and unprofitable Select program while soliciting the Company's stockholders to vote for, among other things, Performance Share Unit ("PSU") awards to its Chief Financial Officer ("CFO"), defendant Melissa Thomas ("Thomas"), and to its former Chief Executive Officer ("CEO") and director, defendant Richard Williams ("Williams"), based on ██████████████████████████████████████████ and material omissions regarding the failure of the Select program.

12.     As a result of this misconduct, Groupon and defendants Williams and Thomas are presently defendants in a related securities class action in the Norther District of Illinois due to violations of federal securities laws.  On August 11, 2021, U.S. District Judge Matthew F. Kennelly granted the plaintiffs' motion for leave to amend their complaint.  When opposing this motion, defendants argued that the court should deny leave to amend because the amended complaint would not survive a motion to dismiss and failed to state a claim.  Judge Kennelly disagreed, holding that the amended complaint sufficiently and plausibly alleged that defendants Williams and Thomas knew of material adverse information regarding the Select program and Goods category at the time they made their misleading statements in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  As a result of this misconduct, the Company faces hundreds of millions of dollars in potential liability and will incur substantial legal costs in defending defendants Williams and Thomas' wrongdoing.

## JURISDICTION AND VENUE

13.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because the claim asserted herein arises under section 14(a) of Exchange Act.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

14.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

15.      Venue is proper in this Court in accordance with 28 U.S.C. §1391 and §1401 because: (i) Groupon is incorporated in this District; (ii) the Company and Individual Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District; and (iii) Groupon and plaintiff have stipulated that the Company's Section 220 materials may only be used in federal court of competent jurisdiction located in the state of Delaware.

## THE PARTIES

**Plaintiff**

16.      Plaintiff Jonathan Frankel was a stockholder of Groupon at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Groupon stockholder.

**Nominal Defendant**

17.      Nominal defendant Groupon is a Delaware corporation with principal executive offices located at 600 W Chicago Avenue, Suite 400, Chicago, Illinois.  Groupon is a

marketplace that connects consumers to merchants through mobile applications and websites. The Company operates in two segments, North America and International, and in three categories, Local, Goods, and Travel. As of December 31, 2020, Groupon had approximately 4,159 employees.

**Defendants**

18.   Defendant Thomas is Groupon's CFO and has been since February 2020. Defendant Thomas was also Groupon's Interim CFO from August 2019 to February 2020; Chief Accounting Officer and Treasurer from November 2018 to February 2020; and Vice President of Commercial Finance from May 2017 to November 2018. Defendant Thomas is named as a defendant in a securities class action complaint that alleges she violated sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, promulgated thereunder. Defendant Thomas knowingly, recklessly, or with gross negligence made or allowed improper statements in the Company's press releases and public filings concerning the Company's: (i) Goods category; (ii) the Company's Select program; and (iii) Groupon's AEBITDA for 2019. In addition, defendant Thomas knowingly, recklessly, or with gross negligence failed to provide adequate oversight regarding the Company's Goods category and Select program, as well as failed to ensure that proper internal controls were in place for financial reporting, ███████████████████████

████████████████████████████████████████████████████

Defendant Thomas was also unjustly awarded with PSU share compensation through the Company's misleading 2020 Proxy that omitted material information regarding the failure and inefficiency of the Select program, including ██████████████████████████. Groupon paid defendant Thomas the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|-------|--------------|----------------------------------------|------------------------|-------|
| 2020 | $547,158 | $620,000 | $3,908,013 | $590,000 | $10,860 | $5,676,031 |
| 2019 | $362,671 | $150,000 | $3,117,442 | $35,951 | $8,400 | $3,674,464 |

19.    Defendant Leonis is Groupon's Chairman of the Board and has been since June 2020, and a director and has been since June 2009. Defendant Leonis was also Groupon's Lead Independent Director from November 2015 to February 2019; Chairman of the Board from August 2013 to November 2015; Co-CEO from February 2013 to August 2013; and Vice Chairman from April 2011 to August 2013. Defendant Leonis is a member of the Company's Audit Committee and has been since at least August 2021. Defendant Leonis knowingly, recklessly, or with gross negligence made or allowed improper statements in the Company's press releases and public filings concerning the Company's: (i) Goods category; (ii) the Company's Select program; and (iii) Groupon's AEBITDA for 2019. In addition, defendant Leonis knowingly, recklessly, or with gross negligence failed to provide adequate oversight regarding the Company's Goods category and Select program, as well as failed to ensure that proper internal controls were in place for financial reporting, ██████████████████████

██████████████████████████████████████████████████████████████

Defendant Leonis also knowingly, recklessly, or with gross negligence issued the Company's 2020 Proxy, ████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████. Specifically, defendant Leonis omitted that he knew that: (i) ██

██████████████████████████████████████████████████████████████

██████████████████████████████████████; and (ii) the Select program's expansion of discounts for the Goods category materially harmed the Company's ability to generate profit in 2019, especially in light of the Goods category's low margins at its

nondiscounted prices.   By withholding this information, defendant Leonsis deceived stockholders into voting to unjustly enrich defendants Thomas and Williams with substantial PSU stock compensation based on the number of members that joined the Select program, and into voting to approve his own nomination and compensation as a director.   Groupon paid defendant Leonsis the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2020 | $20,000 | $245,000 | $265,000 |
| 2019 | $80,000 | $185,000 | $265,000 |

20.     Defendant Lefkofsky is a Groupon director and has been since November 2015. Defendant Lefkofsky was also Groupon's Chairman from November 2015 to June 2020; CEO from August 2013 to November 2015; Co-CEO from February 2013 to August 2013; and Executive Chairman from October 2008 to August 2013.   Defendant Lefkofsky knowingly, recklessly, or with gross negligence made or allowed improper statements in the Company's press releases and public filings concerning the Company's: (i) Goods category; (ii) the Company's Select program; and (iii) Groupon's AEBITDA for 2019.   In addition, defendant Lefkofsky knowingly, recklessly, or with gross negligence failed to provide adequate oversight regarding the Company's Goods category and Select program, as well as failed to ensure that proper internal controls were in place for financial reporting, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

Defendant Lefkofsky also knowingly, recklessly, or with gross negligence issued the Company's 2020 Proxy, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.   Specifically, defendant Lefkofsky omitted that he knew that: (i) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; and (ii) the Select

program's expansion of discounts for the Goods category materially harmed the Company's ability to generate profit in 2019, especially in light of the Goods category's low margins at its nondiscounted prices. By withholding this information, defendant Lefkofsky deceived stockholders into voting to unjustly enrich defendants Thomas and Williams with substantial PSU stock compensation based on the number of members that joined the Select program, and into voting to approve his own nomination and compensation as a director. While in possession of material, nonpublic information concerning Groupon's true business health, defendant Lefkofsky sold 1.5 million shares of his personally held Groupon stock for $4,170,000 in proceeds. Groupon paid defendant Lefkofsky the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2020 | $18,750 | $231,250 | $50,000 | $300,000 |
| 2019 | $75,000 | $175,000 | $50,000 | $300,000 |

21. Defendant Barris is a Groupon director and has been since January 2008. Defendant Barris knowingly, recklessly, or with gross negligence made or allowed improper statements in the Company's press releases and public filings concerning the Company's: (i) Goods category; (ii) the Company's Select program; and (iii) Groupon's AEBITDA for 2019. In addition, defendant Barris knowingly, recklessly, or with gross negligence failed to provide adequate oversight regarding the Company's Goods category and Select program, as well as failed to ensure that proper internal controls were in place for financial reporting, ▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆. Defendant Barris also knowingly, recklessly, or with gross negligence issued the Company's 2020 Proxy, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Specifically, defendant Barris omitted

that he knew that: (i) ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

and (ii) the Select program's expansion of discounts for the Goods category materially harmed

the Company's ability to generate profit in 2019, especially in light of the Goods category's low

margins at its nondiscounted prices.  By withholding this information, defendant Barris deceived

stockholders into voting to unjustly enrich defendants Thomas and Williams with substantial

PSU stock compensation based on the number of members that joined the Select program, and

into voting to approve his own nomination and compensation as a director.  While in possession

of material, nonpublic information concerning Groupon's true business health, defendant

Lefkofsky sold 210,124 shares of his personally held Groupon stock for $490,954.73 in

proceeds.  Groupon paid defendant Barris the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2020 | $20,417 | $249,583 | $270,000 |
| 2019 | $81,667 | $188,333 | $270,000 |

22.    Defendant Bass is a Groupon director and has been since June 2012.  Defendant

Bass is Chair of the Company's Audit Committee and a member of that committee and has been

since at least April 2019.  Defendant Bass knowingly, recklessly, or with gross negligence made

or allowed improper statements in the Company's press releases and public filings concerning the

Company's: (i) Goods category; (ii) the Company's Select program; and (iii) Groupon's

AEBITDA for 2019.  In addition, defendant Bass knowingly, recklessly, or with gross

negligence failed to provide adequate oversight regarding the Company's Goods category and

Select program, as well as failed to ensure that proper internal controls were in place for

financial reporting, ████████████████████████████████████████████████████████████

████████████████████████████████████████████.  Defendant Bass also knowingly, recklessly,

or with gross negligence issued the Company's 2020 Proxy, ██████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████. Specifically, defendant

Bass omitted that he knew that: (i) ██████████████████████████████

████████████████████████████████████████████████████████████

███████, and (ii) the Select program's expansion of discounts for the Goods category

materially harmed the Company's ability to generate profit in 2019, especially in light of the

Goods category's low margins at its nondiscounted prices. By withholding this information,

defendant Bass deceived stockholders into voting to unjustly enrich defendants Thomas and

Williams with substantial PSU stock compensation based on the number of members that joined

the Select program, and into voting to approve his own nomination and compensation as a

director. Groupon paid defendant Bass the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Award | Total |
| --- | --- | --- | --- |
| 2020 | $22,500 | $262,500 | $285,000 |
| 2019 | $85,000 | $195,000 | $280,000 |

23.     Defendant Wahl is a Groupon director and has been since October 2017.

Defendant Wahl knowingly, recklessly, or with gross negligence made or allowed improper

statements in the Company's press releases and public filings concerning the Company's: (i)

Goods category; (ii) the Company's Select program; and (iii) Groupon's AEBITDA for 2019. In

addition, defendant Wahl knowingly, recklessly, or with gross negligence failed to provide

adequate oversight regarding the Company's Goods category and Select program, as well as

failed to ensure that proper internal controls were in place for financial reporting, ████████

████████████████████████████████████████████████████████████

████████████████████. Defendant Wahl also knowingly, recklessly, or with gross negligence issued

the Company's 2020 Proxy, ███████████████████████████████████████

████████████████████████████████████████████████████████████

- 12 -

 Specifically, defendant Wahl omitted that she knew that: (i) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬; and (ii) the Select program's expansion of discounts for the Goods category materially harmed the Company's ability to generate profit in 2019, especially in light of the Goods category's low margins at its nondiscounted prices. By withholding this information, defendant Wahl deceived stockholders into voting to unjustly enrich defendants Thomas and Williams with substantial PSU stock compensation based on the number of members that joined the Select program, and into voting to approve her own nomination and compensation as a director. Groupon paid defendant Wahl the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
| --- | --- | --- | --- |
| 2020 | $20,000 | $235,000 | $255,000 |
| 2019 | $75,000 | $175,000 | $250,000 |

24.     Defendant Williams was a Groupon's CEO and a director from November 2015 to March 2020; Chief Operating Officer from 2015 to November 2015; President, North America from October 2014 to November 2015; and Senior Vice President from June 2011 to October 2014. Defendant Williams is named as a defendant in a securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, promulgated thereunder. Defendant Williams knowingly, recklessly, or with gross negligence made or allowed improper statements in the Company's press releases and public filings concerning the Company's: (i) Goods category; (ii) the Company's Select program; and (iii) Groupon's AEBITDA for 2019. In addition, defendant Williams knowingly, recklessly, or with gross negligence failed to provide adequate oversight regarding the Company's Goods category and Select program, as well as failed to ensure that proper internal controls were in place for

financial reporting, ████████████████████████████████████████████

████████████████████████████████     Groupon paid defendant Williams the

following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|----------------------------------------|------------------------|-------|
| 2020 | $373,907 | $6,105,329 | - | $893,357 | $7,372,593 |
| 2019 | $825,342 | $19,291,039 | $194,302 | $26,447 | $20,337,130 |

25.    Defendant Michael Angelakis ("Angelakis") was a Groupon director from April

2016 to May 2021.  Defendant Angelakis was a member of the Company's Audit Committee

from at least April 2019 to May 2021.  Defendant Angelakis knowingly, recklessly, or with gross

negligence made or allowed improper statements in the Company's press releases and public

filings concerning the Company's: (i) Goods category; (ii) the Company's Select program; and

(iii) Groupon's AEBITDA for 2019.  In addition, defendant Angelakis knowingly, recklessly, or

with gross negligence failed to provide adequate oversight regarding the Company's Goods

category and Select program, as well as failed to ensure that proper internal controls were in

place for financial reporting.████████████████████████████████████

████████████████████████████████████████.  Defendant Angelakis also

knowingly, recklessly, or with gross negligence issued the Company's 2020 Proxy, ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████.  Specifically, defendant Angelakis omitted that he knew that: (i) ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████, and (ii) that the Select program's

expansion of discounts for the Goods category materially harmed the Company's ability to

generate profit in 2019, especially in light of the Goods category's low margins at its

- 14 -

nondiscounted prices.   By withholding this information, defendant Angelakis deceived stockholders into voting to unjustly enrich defendants Thomas and Williams with substantial PSU stock compensation based on the number of members that joined the Select program, and into voting to approve his own nomination and compensation as a director.   Groupon paid defendant Angelakis the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
| --- | --- | --- | --- |
| 2020 | $21,250 | $238,750 | $260,000 |
| 2019 | $75,000 | $175,000 | $250,000 |

26.   Defendant Ann Ziegler ("Ziegler") was a Groupon director from June 2014 to October 2020.  Defendant Ziegler was also a member of the Company's Audit Committee from at least April 2019 to October 2020.  Defendant Ziegler knowingly, recklessly, or with gross negligence made or allowed improper statements in the Company's press releases and public filings concerning the Company's: (i) Goods category; (ii) the Company's Select program; and (iii) Groupon's AEBITDA for 2019.  In addition, defendant Ziegler knowingly, recklessly, or with gross negligence failed to provide adequate oversight regarding the Company's Goods category and Select program, as well as failed to ensure that proper internal controls were in place for financial reporting, ███████████████████████████████████████████ ████████████████████████████████████.  Groupon paid defendant Ziegler the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
| --- | --- | --- | --- |
| 2020 | $22,500 | $155,000 | $177,500 |
| 2019 | $75,000 | $175,000 | $250,000 |

27.   The defendants identified in ¶¶18, 24 are referred to herein as the "Officer Defendants."   The defendants identified in ¶¶19-26 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶22, 25-26 are referred to herein as the "Audit Committee Defendants."   The defendants identified in ¶¶20-21 are referred to herein as the

"Insider Selling Defendants."   Collectively, the defendants identified in ¶¶18-26 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

28.     By reason of their positions as Groupon officers and directors, each of the Individual Defendants owed the Company and its stockholders fiduciary obligations of care and loyalty, and were and are required to use their utmost ability to control and manage Groupon in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Groupon and not in furtherance of their personal interest or benefit.

29.     To discharge their duties, the officers and directors of Groupon were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company, including its: (i) Goods category; (ii) Select program; and (iii) reported financial figures, such as its AEBITDA for 2019.  Each director and officer of the Company owes to Groupon and its stockholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  By virtue of such duties, the officers and directors of Groupon were required to, among other things:

(a)     exercise good faith oversight to ensure that Groupon's public statements and reports accurately reported and disclosed material information regarding the Company's business operations and financial standing, including, Groupon's: (i) Goods category; (ii) Select program; and (iii) financial standing, such as its reported 2019 AEBITDA;

(b)     exercise a reasonable, good-faith inquiry into Groupon's business operations and profitability, such as its Goods category, including whether the Company's decision to incorporate the Goods category within the Select program would adversely affect its ability to generate gross profits;

(c)     exercise a reasonable, good-faith inquiry into the Company's Select program initiative, including whether the Select program was operating profitably and retaining its members over time;

(d)     oversee and monitor the sufficiency of the Company's internal controls for financial reporting, including, but not limited to, Groupon's AEBITDA for 2019;

(e)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(f)     refrain from engaging in the sale of the Company's stock while in possession of material, nonpublic information regarding Groupon;

(g)     remain informed as to how Groupon conducted its operations, including its Goods category and Select program, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws; and

(h)     exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence when put on notice of problems with the Company's business practices

and operations, such as issues with its Goods category, Select program, and its previously reported AEBITDA for 2019.

30.     In addition to the duties outlined above, the Individual Defendants are also required to adhere to the Company's Global Code of Conduct (the "Code"). The legal and ethical standards of conduct for directors, officers, employees, and consultants of Groupon are set forth in the Code.

31.     According to the Code, the employees and directors of the Company are responsible for maintaining a good reputation for Groupon and ensuring that its stockholders, its employees, and the public can trust its public statements. Pursuant to the Code, the Individual Defendants all had a duty to ensure that Groupon accurately and fairly reported its financial status in conformance with applicable securities rules, regulations, and guidance. In particular, the Code stated:

> Groupon requires all employees, board members, contractors, consultants, and others who may be temporarily assigned to perform work or services for Groupon or any of its subsidiaries, affiliates, and acquired entities to know and follow the Code. Each person associated with Groupon has a personal responsibility to incorporate, and to encourage others to incorporate, these principles and values into their work.

*     *     *

> Groupon is a publicly traded company, and we must ensure that our corporate records fairly and accurately reflect all transactions and disposition of assets in accordance with United States Generally Accepted Accounting Principles. Anyone who has a concern regarding, or becomes aware of improper or inaccurate books and records activity by, anyone working on Groupon's behalf must report this activity immediately to the Compliance Team (legalcompliance@groupon.com) or by using EthicsPoint.

> Further, anyone who becomes aware of a failure by Groupon to comply with accounting procedures mandated by the Federal securities laws, U.S. Securities and Exchange Commission ("SEC") rules, or any other applicable securities rules, regulations, or guidance (collectively, "Applicable Rules"), or anyone who is asked to discharge their respective duties in a manner that fails to comply with

any such Applicable Rules, shall immediately report the event via email to the Compliance Team (legalcompliance@groupon.com) or via EthicsPoint.

Any employee who is asked to improperly report revenue, or falsify any other records related to compliance with Applicable Rules, or who becomes aware of such conduct by anyone else, shall immediately report the event via email to the Compliance Team (legalcompliance@groupon.com) or by using EthicsPoint.

All complaints (including those made to the Compliance Team at legalcompliance@groupon.com or by using EthicsPoint) regarding a failure to comply with Applicable Rules shall be reported to Groupon's General Counsel or the General Counsel's designee.

*     *     *

Ensuring accurate and complete business and financial records is everyone's responsibility, not just a role for Finance and Accounting personnel.  Accurate record keeping and reporting reflects on Groupon's reputation and credibility, and it ensures that Groupon meets its legal and regulatory obligations.

*     *     *

Honest and accurate recording and reporting of information is critical to making responsible business decisions.  Accordingly, Groupon's financial books, records, and accounts must reflect transactions and events accurately and conform to applicable legal requirements, United States Generally Accepted Accounting Principles, and Groupon's system of internal controls

32.    In addition, Groupon's Code explicitly prohibited defendants from engaging in the sale of the Company's stock while in possession of material, nonpublic information.  In particular, the Code stated:

While engaged in Groupon business, you may have access to or learn of confidential, competitively sensitive, or proprietary information that has not been disclosed to the public.  Groupon obeys all laws with respect to the disclosure of material, nonpublic information.  Applicable laws prohibit trading in securities by persons in possession of material, nonpublic information.  Accordingly, you should not buy or sell, or recommend that someone else trade in Groupon securities or the securities of another company involved with Groupon, while having material, nonpublic information about Groupon or that company.  In addition, you should not disclose material, nonpublic information about Groupon or another company to anyone outside of Groupon.  These and other guidelines and requirements regarding insider trading are found in Groupon's Insider Trading Policy, which you are expected to review and follow.

33.     According to the Code, Groupon requires that "anyone who becomes aware of a failure by Groupon to comply with accounting procedures mandated by the Federal securities laws, U.S. Securities and Exchange Commission ('SEC') rules, or any other applicable securities rules, regulations, or guidance," shall immediately report such noncompliance.  As noted above, the Company's Code also explicitly prohibits the Insider Selling Defendants from engaging in insider trading as well, stating: "[Y]ou should not buy or sell, or recommend that someone else trade in Groupon securities or the securities of another company involved with Groupon, while having material, nonpublic information about Groupon or that company."

**Additional Duties of the Audit Committee Defendants**

34.     In addition to these duties, the Audit Committee Defendants, defendants Bass, Angelakis, and Ziegler, owe and owed specific duties to Groupon to assist the Board in overseeing and monitoring the quality and integrity of the Company's financial reporting, among other things:

(a)     discuss with management and the independent auditors the adequacy and effectiveness of the accounting and financial controls, including the Company's system to monitor and manage business risk and legal and ethical compliance policies;

(b)     review with management and the independent auditors the quarterly and annual financial statements, including judgments regarding the quality (not just the acceptability) of accounting principles and policies, the reasonableness of significant judgments and the clarity of the disclosures in the financial statements;

(c)     review with management earnings press releases (including any use of pro forma or other non-generally accepted accounting principles information) prior to the issuance of any such press release;

(d)    provide and approve the report of the Committee to be included as part of the Company's Annual Report on Form 10-K or annual Proxy Statement, as applicable, in accordance with applicable rules and regulations;

(e)    the Audit Committee shall meet at least six times per year, which shall include meetings prior to: (i) the commencement of significant audit procedures; (ii) completion of the audit; and (iii) filing with the SEC of any Annual Report on Form 10-K and Quarterly Report on Form 10-Q.  The Audit Committee may also hold special meetings that may be called by telephone or written notice by the chairperson of the Committee.  The Audit Committee will cause to be kept adequate minutes of its proceedings and shall report periodically, as deemed necessary or desirable by the committee, to the Board regarding the committee's actions and recommendations.  The minutes of Audit Committee meetings shall be retained for at least ten years.  The Audit Committee may have in attendance such representatives of management, consultants, advisors or others as it may deem necessary to provide the necessary information to carry out its duties; and

(f)    The Audit Committee shall report as to its activities to the Board and, where appropriate, its recommendations for action by the Board at its next meeting subsequent to that of the committee.  Certain action by the Audit Committee may be similarly reported to the Board for approval or ratification.

35.    As such, the Audit Committee Defendants owed a responsibility to Groupon to ensure that the Company was properly discussing and monitoring its risk assessment as to the financial risk posed by potential problems for the Goods category, the Select program, and the Company's reported AEBITDA for 2019.  In addition, the Audit Committee Defendants owed

the Company a duty to ensure that its financial reporting had adequate controls in place to ensure that Groupon's ability to record, process, summarize, and report financial data was not impacted.

**Breaches of Duties**

36.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Groupon, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

37.     The Individual Defendants breached their duty of loyalty by allowing to cause, or by themselves causing, the Company's dissemination of misleading and deceptive public statements, which omitted material information, regarding Groupon's: (i) Goods category; (ii) Select program; and (iii) reported AEBITDA for 2019.  As a result of these improper practices, the Individual Defendants wasted the Company's assets, and caused Groupon to incur substantial damage.

38.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Groupon, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Groupon has expended, and will continue to expend, significant sums of money, including, but not limited to, defending the Officer Defendants' wrongdoing in the related securities class action.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

39.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with

and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

40. During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including stockholders of Groupon, regarding the Individual Defendants' management of Groupon's operations, specifically, its: (a) Goods category; (b) Select program; and (c) AEBITDA for 2019; (ii) facilitate the Insider Selling Defendants' illicit sale of over $4.6 million of their personally held shares while in possession of material, nonpublic information; and (iii) enhance the Individual Defendants' executive and directorial positions at Groupon and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

41. The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violation of securities law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning (i) Groupon's Goods category; (ii) the Company's Select program; and (iii) Groupon's AEBITDA for 2019.

42. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly engage in disseminating misleading and deceptive public statements, which omitted material information, regarding: (i) Groupon's Goods category; (ii) Select program; and (iii) reported AEBITDA for 2019. Because the actions described herein occurred under the authority of the

Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

43.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## FACTUAL BACKGROUND

44.     Groupon offers consumers a marketplace to purchase goods and services from merchants on the Company's websites and mobile applications.   The Company's business operations are comprised of three distinct categories: (i) Local, which offers consumers with various experiences, such as: (a) events and activities; (b) health and beauty; (c) food and drink; (d) home and garden; (e) and automotive; (ii) Goods, which generates product revenue through the Company's sale of merchandise inventory directly to consumers, such as electronics, sporting goods, jewelry, toys, household items, and apparel, as well as service revenue generated by third-party merchants that use Groupon's marketplaces; and (iii) Travel, which provides consumers with various offers to hotels, airfare, and package deals.

**Groupon Struggles to Maintain Its Customer Base and Attract New Customers**

45.     Like many online businesses, maintaining and growing Groupon's active customer base was mission critical for Groupon.  Since the beginning of 2018, however, the Company was experiencing a worrying downward trend in its active customer base.  Between the end of 2017 and the end of 2018, Groupon lost 1.3 million, or 2.6%, of its total active customer base.   Starting in 2019, Groupon's active customer base problems worsened

- 24 -

dramatically.  In 2019 alone, the Company lost *4.6 million*, or 9.5%, of its total active customer base, and nearly four times the amount of its active customer base lost in 2018:



Global Active Customers[1] (millions)

46.    On February 12, 2019, Groupon's letter to stockholders for the fourth quarter and year-end of 2018 attributed $100 million in lost profit as a result of these "traffic headwinds" and declining active customer base.  In response to its declining active customer base, Groupon's then CFO, Michael Randolfi ("Randolfi"), explained to analysts and investors during the Company's fourth quarter 2018 earnings conference call, held on February 13, 2019, that Groupon was experiencing ongoing "headwinds" from its two marketing channels, namely its: (i) e-mail marketing channels; and (ii) search engine optimization and serach engine marketing channels.  However, Randolfi assured analysts and investors that Groupon anticipated these headwinds to continue, and that the Company's reported guidances, such as its AEBITDA for 2019 of $270 million, "contemplates the continuation of those trends."  In particular, Randolfi stated:

On the headwinds with regards to e-mail and Google, yes, you're right, for 2018, we sized that at about $100 million in 2018. It's going to be disproportionately e-mail. I mean, Google is a piece of it, but e-mail is going to be the larger piece of that $100 million. Our overall view going into 2019 is that, that trend doesn't get better. And we're not necessarily assuming it gets worse, but our plan and the guidance we've given today contemplates the continuation of those trends, and we build upon that. And so we would expect a similar level of headwind in 2019 as we experienced in 2018, and that's reflected in the guidance that we've provided here.

47.    During the earnings call, Randolfi continued by adding that the Company was now focusing on active customers that offered higher potential for gross profit generation, as opposed to overall active customers, and initiatives that lead to "higher gross profit per customer." In particular, he stated:

Our goal is to, ultimately, be investing in the things that are going to improve customer experience, have that ultimately lead to higher gross profit per customer, and therefore, have that result in both higher returns for existing customers, but also then give us the ability to acquire and retain customers that perhaps before wouldn't have been economic, but become economic because of the improved level of conversion. So that's our goal, and that's why our focus is on customer experience, particularly targeting increased conversion. As we go throughout this year, what we have talked about in our commentary is that we would expect that in both North America and international, we continue to see strength in GP per customer. That's a trend we would expect to continue as the year progresses and even into -- potentially into 2020.

48.    While defendants were aware of the ongoing "traffic headwinds" negatively affecting Groupon's business operations and financial performance, defendants approved, issued, and/or allowed for public statements to be disseminated to the investing public during 2019 and 2020. The statements were false, misleading, and omitted material information regarding the Company's efforts to increase profitability in its Goods category, its initiatives to achieve such goals, like the Select program, and its ability to meet its reported financial expectations.

49.    Specifically, defendants made, authorized, or allowed public statements in 2019 and 2020 that were misleading, deceptive, and omitted material information regarding: (i) the Company's Goods category that defendants knew since January 2019: (a) ▮▮▮▮▮▮▮▮▮▮

- 26 -



; (ii)

and that the Select program "over-indexed" the less profitable Goods category since mid-2019; and (iii) the Company's reported AEBITDA of $270 million for 2019

Despite this advanced knowledge, defendants made or allowed the Company to continue to misleadingly report the opposite, claiming that: (i) the Goods category was an "engagement driver" that drove customers to its Local category; (ii) the Select program was operating profitably, while omitting that

and disproportionately utilized its discounts for the already struggling Goods category; and (iii) that the Company still expected an AEBITDA of $270 million for 2019.

**Defendants Defend the Goods Category as an "Engagement Driver" to the Company's Profitable Local Category**

50.     Out of its three operational categories, Groupon relies heavily on its Local category to generate its profits.   In 2019, for example, the Company reported in its Annual Report on Form 10-K for the fiscal year ended December 31, 2018 (the "2018 Form 10-K") that the Local category accounts for nearly ***73% of Groupon's gross profits,*** despite making up less than 39% of the Company's overall revenue.   On the other hand, Groupon's Goods category represented over 56% of the Company's total revenue, yet generates less than 20% of Groupon's total gross profits.

51.     Despite its low profit margins, the Company routinely defended its Goods category throughout 2019, claiming that the Goods category was critical to Groupon because it attracted new customers to its websites and mobile applications.   By attracting new customers,

- 27 -

the investing public was repeatedly assured that the Goods category still added value to the Company by encouraging new customers to engage with the Company's other business categories, such as Groupon's much more profitable Local category.

52.     From the beginning of 2019, Groupon publicly justified its decision to continue to operate its Goods category because it was a "solid engagement driver" to the Company's highly profitable Local category.  For example, analysts questioned Groupon's decision to even operate the Goods category during the February 13, 2019 conference call regarding the Company's Q4 and FY 2019 financial results: "How do you view the Goods … segment[] fitting into the portfolio?  Would you ever think of selling the Goods business and becoming leaner and kind of going all in on Local Discovery?"  In response to these questions, Groupon's then CEO and director, defendant Williams assured the investing public that the Goods category was a "solid engagement driver" that "help[ed] bridge" its customers to a "local-focus marketplace."  In particular, defendant Williams stated:

> Goods has been a ***good, solid engagement driver*** for us over the years.  We have a different version of Goods than our typical e-commerce competitor.  And our focus with Goods has just been making it more and more efficient and driving more gross profit albeit at lower units and lower overall volume.  But we're just trying to build a good quality business there that ***continues to engage customers and help us bridge to this vision of a broader Local focus marketplace***.

53.     However, the defendants knew defendant Williams' February 13, 2019 statements were false and misleading based on the nonpublic information provided to defendants in January 2019.

54.     During the January 15, 2019 Board meeting and presentation, the defendants were

███████ Groupon-220-0000004.[1]  For example, the January 15, 2019 Board presentation noted █████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████" *Id.* In particular, it stated:



*Id.*

      55.     In fact, Groupon's executive summary for the January 15, 2019 Board presentation indicated that the Company ███████████████████████████████████████

██████" Groupon-220-0000003.  In particular, it stated:

---

[1] All references to "Groupon-220-_____" are from the Section 220 documents produced in response to plaintiff's inspection demand.



*Id.*

56.     The presentation reiterated on another slide that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Groupon-220-0000007.  In particular, it stated:



*Id.*

57.     The January 15, 2019 Board presentation also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████ Groupon-220-0000009.   The

presentation █████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████" *Id.* In particular, it stated:



*Id.*

58.    As the January 15, 2019 Board meeting presentation reflects, Groupon was

███████████████████████████████████████████████████████

█████████████████████████████" Groupon-220-0000009.  According to the January 15,

2019 Board meeting minutes, defendants were ███████████████████████████

████████████████████████" Groupon-220-0000023.

59.    As reflected in the meeting minutes, defendants Angelakis, Barris, Bass,

Lefkofsky, Wahl, and Ziegler were all in attendance, including Williams, and thus knew about

the significant problems associated with the Goods category. *Id.*  As evidenced by these meeting

minutes and presentations, the Director Defendants knew in the beginning of 2019 that (i)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ "

    60.    Instead of disclosing this material information, defendants omitted this material

information regarding the Goods category during 2019, and in fact, approved or allowed

Groupon to incorporate the Goods category in its Select program initiative, ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

**Groupon Announces Its Select Program to Increase Profitability per Customer While Operating Profitably**

    61.    Groupon's Select program was a loyalty initiative that offered various discounts to

the Company's North American customers, in addition to other benefits such as free shipping, in

exchange for a $4.99 monthly membership fee.  Initially, the Company's Select program did not

offer any discounts as to the Goods category to its members.  Instead, the Select program

provided customers with a 25% discount on Local category purchases and a 10% discount on

Travel category purchases.

62.   The Company publicly introduced the existence of its Select program on July 30,

2019, when defendant Williams disclosed in his letter to stockholders for the second quarter of

2019 that the Company's Select program had been on-going "over the last few quarters," and was

generating substantial increases in consumer purchasing frequency while operating profitably.  In

particular, defendant Williams disclosed:

> Last, while related to our initiative to improve the customer experience, I wanted
> to give some dedicated space to introduce a new program we launched over the
> last few quarters: an exciting new membership product in North America, called
> Groupon Select.  Groupon Select amplifies the best of Groupon[.]
>
> *      *      *
>
> Initial indicators are very positive with significantly improved purchase
> frequency, higher average order value and increased customer propensity to
> search for things to eat, see, do and buy.

63.   Although defendant Williams noted that the Select program had been going on

"over the last few quarters," the Company did not specifically disclose the Select program in its

2018 Form 10-K, only noting that "[o]ur marketing activities also include elements that are not

presented as Marketing on our consolidated statements of operations, such as order discounts and

free shipping on qualifying merchandise sales."

64.   During the Company's second quarter 2019 earnings conference with analysts and

investors held on July 31, 2019, defendant Williams reiterated the importance of the Select

program initiative, which he described as "critical to transforming the business."  During this

conference call, an analyst pointed out some potential issues with ensuring that the Select

program operated at a profit, explaining that the Select program's discounts and other benefits,

such as free shipping, could potentially allow Select program members to recoup four to five

times the amount of a single subscription fee ($4.99) by simply making one "decent-sized

purchase."  The analyst then asked whether the Select program would negatively impact

Groupon's margins, and if the Select program subsidization of growth and purchase frequency could threaten the Company's margins, stating:

> I wanted to ask on Groupon Select. First, I think, you made a comment that you're going to push it in the checkout and it's going to reduce conversions. I just wanted to make sure I understood that correctly and why the dynamic works that way. And then overall kind of philosophically how you think about Select, it's $5 a month, but it drives a lot of incentives, that there is a lot of 25% off Local services, free shipping. I spent some time with it. Feels like you can almost get back your $5 a month or [accrual] even through kind of one decent-sized purchase, you can get 4 months to 5 months of your monthly subscription fee back through that purchase and that discount. So it certainly seems like a good consumer value and can you just talk about how you think about it. If it scales, can it have a negative revenue margin impact?

65.    In response, Randolfi told the analyst that the Select program was operating at a profit and that Groupon expected members of its Select program to generate "almost double the average gross profit per customer that we generate today." Randolfi also justified Groupon's 25% discount on Local category purchases because the Company generated 32-33% profit from its Local category, and thus, remained profitable even after the discount. In particular, he stated:

> And I would say it's still early days. But what I would also say, based on indicators that we've seen so far, the consumer behavior, when someone enrolls in Select, is really, really positive. We've seen meaningful step-ups in purchase frequency, meaningful step-ups in the average order value and a greater propensity to Search. So we are really, really pleased and excited about that. And with that, the way the -- if you think about the economics, you're right. It is a great consumer proposition. And that's the intent and that's by design. If you think about the math of Groupon Select, we, essentially, are charging a fee of $4.99 a month. So we will get somewhere between $55 to $60 per customer in gross profit per year. As part of the Select program, you're right that we provide meaningful discounts on a given transaction. There's 2 things to take into account on that discount per transaction. First, in almost all cases, the discount still is below -- is at or below the current take rate. For example, if you look at Local, you look at our current take rate of 32%, 33%, the discount is 25%. So we're still earning money on the individual transaction.

66.    As will be discussed further below, the above statements were false and misleading because Groupon's Select program ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. In

- 34 -

other words, the representation to the investing public that the Company could expect between $55 to $60 per customer in annual gross profit to offset the discounts offered to customers was ███████████████████████████████████████████████████████████████ ███████████████

67.     Despite the publicly reported claim that Groupon's Select program had the ability to generate "almost double the average gross profit per customer," and was operating for the last few quarters, the Company's gross profit for North America continued to decline.  As reflected in Groupon's July 30, 2019 press release for its second quarter 2019 financial results, gross profit declined 9% compared to the same quarter of the prior year, falling from $216.4 million in gross profit in the second quarter of 2018 to $198.6 million in gross profit for the second quarter of 2019.

**Groupon Wrongly Expands the Select Program to Include the Goods Category**

68.     Although the Select program was failing to improve the Company's overall profitability, Groupon later decided to expand the Select program to offer discounts on its less profitable Goods category.  In its August 6, 2019 press release titled, "Groupon Launches Groupon Select—New Membership Program Providing Access to Exclusive Savings and Insider Perks," the Company announced that the Select program now also offered members a 15% discount on the Goods category and free shipping for merchandise inventory sold directly by Groupon.  Groupon's Select program also did not have any "savings caps" or "order minimums" to qualify for the free shipping, further complicating the ability for its Good category to generate profits given its existing low profit margins.

69.     Expanding the Select program to include discounts and free shipping for the Goods category was not a sound business judgment because the Director Defendants knew that

███████████████████████████████████████████████████ Since at least January
2019, the Director Defendants knew that: (i) ████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████" Despite this
knowledge, the Director Defendants approved, or at the very least allowed Groupon's
management to go against the Company's best interests and expand the Select program to
incorporate discounts for the Goods category.

70.    Moreover, the Individual Defendants knew based on Groupon's 2018 Form 10-K
that the Company's Goods category was already operating at low profit margins, and that further
discounts and the free shipping offered through the Select program would also materially
jeopardize the Company's ability to operate its Goods category at a profit.  Despite these red flag
warnings, the Individual Defendants approved or allowed the Company to incorporate discounts
for its Goods category within the Select program.  Alternatively, the Individual Defendants failed
to provide oversight over the Select program and Goods category, and allowed the Company's
management to misstep in expanding the Select program to the Goods category.

71.    According to Board meeting minutes from October 16-17, 2019, the Director
Defendants ███████████████████████████████████████████████████████████████
███████████████████████████████████████████ For example, Director Defendants
████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ " Groupon-220-

0000059.  The Director Defendants were ███████████████████████████████████████

███████████████████████████████████████████████████████████████ " Groupon-220-

0000081. ████████████████████████████████████████████████████████████████████

████████████████████████████████████████

72.    In addition, Board meeting minutes from October 17, 2019 show that the

defendants ██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████." Groupon-220-0000198.  Thus,

within months of implementing discounts for the Goods category in its Select program,

defendants ██████████████████████████████████████████████████████████████████

████████████████████████████████████████████

73.    Groupon's public filings with the SEC offered little to no information on the status

of the Company's Select program.  For example, the Company's Quarterly Report on Form 10-Q

for the third quarter ended September 30, 2019, filed with the SEC on November 4, 2019, noted:

> We have developed and are testing a number of product enhancements intended to
> make our offerings easier to use for both customers and merchants and to improve
> purchase frequency, including cash back offers linked to customer credit cards,
> booking capabilities and a paid membership program in North America, Groupon
> Select, which offers greater discounts on our offerings and other benefits.  …
> While we expect to invest in our key initiatives, we will continue to do so as
> disciplined operators and seek opportunities to improve our efficiency.

74.    Groupon's Form 10-Q for the third quarter of 2019 was signed by defendants

Williams and Thomas, and ███████████████████████████████████████████████████

██████████████████████████████████████████. Like prior SEC filings,

the Company also failed to disclose the material information that defendants were███████████

█████████████████████████████████████████████████████████████████████

75.     Despite discussing these issues internally with the other defendants, defendant Williams doubled down on touting the benefits of the Select program for Groupon in false and misleading public statements during November 2019.  For example, on November 4, 2019, defendant Williams issued his letter to stockholders for the third quarter of 2019, wherein he claimed that the Company was "lov[ing] how Select members continue to behave."  In particular, defendant Williams wrote:

> It's still very early, but we're pleased with the results to date.  We now have more than 260,000 paying Select members, up by over 100,000 in the quarter and nearly 200,000 since the beginning of the year.  Membership gains are encouraging, and we love how Select members continue to behave.  Currently, we're seeing a 60 percent increase in purchase frequency and a 20 percent jump in average order value.  Though encouraging, we are still analyzing these early results -- our first small cohorts are barely through their first year with the program -- and we still have work to do to fully build out the infrastructure necessary for Select to run at scale.

76.     As will be discussed further below, defendant Williams' statements were false and misleading because Groupon's Select program ███████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

77.     On November 4, 2019, Groupon issued its press release announcing its financial results for the third quarter of 2019.  Groupon reported that the Goods category became even less profitable after the Select program was expanded to offer discounts and free shipping for Groupon's Goods category.  Specifically, the Company's Goods category's gross profits dropped by over 15% for North America, falling from $31 million in the third quarter of 2018 to $26 million in the third quarter of 2019.

78.     The Individual Defendants intentionally omitted or allowed to be omitted that the steep decline in gross profits for the Company's Goods category was due, in part, to Select program customers "over-indexing" or prioritizing discounted purchases of the Goods category that started in the second half of 2019.   While defendant Thomas did not disclose this information until February 2020, she noted that Groupon first observed this trend "in the second half of 2019," demonstrating that Individual Defendants were aware or should have been aware that the decline in gross profits for its Goods category was attributable to the Select program initiative.

79.     The Director Defendants were warned back in January 2019 regarding ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ "

80.     On November 5, 2019, Groupon held an earnings conference call with analysts and investors to discuss its third quarter 2019 financial results.   Defendants Williams and Thomas attended the call and reported to the investing public that the Select program was one of Groupon's "key strategic priorities" and a "key initiative[]" for the Company.   Adding to this positive sentiment, defendant Thomas discussed how the Select program's "encouraging results" to date were exciting, and that the Select program resulted in a 60% boost to purchasing frequency for its customers.   In particular, defendant Thomas stated:

> Select members increased purchase frequency by about 60% and average order values by about 20%.  We believe these early positive results illustrate our ability to monetize the member-like behavior of our customers and demonstrate the power of our massive Local two-sided marketplace.  By making progress on these fronts, we believe we can unlock the potential of our financial model and deliver long-term gross profit growth and significant adjusted EBITDA.

81.     While the Select program had initially started out as a trial initiative to improve purchasing frequency, defendant Williams reported during the conference call that the Company

- 39 -

was starting to see the Select program permeate throughout the Groupon customer experience. In particular, defendant Williams stated:

> It's important to remember, Select was an experiment, was a trial that we've iterated on and we continue to develop over time and we are excited by it. But we're excited about it in a way that we're feeling it needs to be part of Groupon. It can't just be the side; the side test for a group of people really needs to be – needs to permeate the Groupon customer experience, which we're starting to see.

82.    During the call, defendant Thomas was asked as to explain why the Select program was expected to be "profit neutral" in the fourth quarter of 2019. In response, defendant Thomas assured that the Select program was "earning incremental [profit] on the transactions" and that the operating profits for the Select program would offset investment and development costs. Defendant Thomas also misleadingly reported that the 60% boost in purchasing frequency only occurred "180 days post-enrollment in the program." Defendant Thomas omitted the material information that Groupon ███████████████████████████████ ███████████████████████████████████

83.    Less than a week later, on December 11, 2019, defendant Williams attended the Barclays Global Technology, Media, and Telecommunications Conference. Defendant Williams again assured that "the total economics of the [Select] program [were] really compelling" and that Company was "making money on the units." In particular, he stated:

> So, there is -- one of the things I'd say about Select, so two things. One, I'm most -- what I'm most excited about with Select is that, the demonstration that we can move purchase frequency up into the right. And that's historically I think for many business has been one of the most difficult things, if not, the most difficult thing to do is to move buying behavior and intensify it. We're showing with Select with 60% improvement in purchase frequency within the first six months, we're showing we can move that needle.
>
> *       *       *
>
> The other piece on that program is, yes, our margins are such that we make money on the units. … [W]e're making money on the units as well as making

money on the membership fees as well.  So the total economics of the program
are really compelling.

84.     In reality, Groupon's Select program was failing to operate profitably or attract the
Company's active customer base towards its profitable Local category.  As discussed above, the
October 16-17, 2019 Board presentation reported that the Select program was ██████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████"  Groupon-220-0000197.  As later revealed by
defendant Thomas, the Company was aware of a concerning trend in the Select program starting
in the second half of 2019 wherein its active customer base was "over-indexing" the Goods
category through the Select program, thus eroding the little, if any, profit derived from
discounted sales of merchandise inventory with free shipping.  To compound matters even
further, defendants knew or should have known that the Select program membership ██████████

████████████████████████████████████████████████████████████████████

████████████

85.     According to the Board presentation from the December 17, 2019 meeting,

████████████████████████████████████████████████████████████████████

████████████████████████████████████████  Groupon-220-0000401.  ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████  *Id.*  ████████████████████████████████████████

████████████████████████  *Id.*  ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████  *Id.*  In particular, it stated:

- 41 -



*Id.*

86.     In sum, defendants caused or allowed the investing public to be seriously misled about the value of its Goods category and the Select program.  Since January 2019, the Director Defendants knew that: (i) ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ "

87.     Despite this adverse, nonpublic information that ███████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ " the

Director Defendants incorporated or allowed the Goods category to be added to the Select

program in August 2019. Within months of offering discounts to its Goods category, which the

Director Defendants knew or should have known operated with low profit margins, the Director

Defendants were notified via the Board presentation in October 2019 that the Select program was

████████████████████████████████████████████████████. The Director

Defendants were also notified that ███████████████████████████████████

██████████████████████████

    88.    ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████. In addition, defendants knew or should have known that the

Select program was being used disproportionately by Groupon's customers, or "over-indexed" to

purchase from its Goods category starting in mid-2019, yet was not disclosed publicly until

February 2020.

**Groupon's Misleading 2019 Guidance for AEBITDA**

    89.    On January 15, 2019, the Director Defendants were informed that the Company's

projected AEBITDA was $270 million. Groupon-220-0000023. That turned out to be incorrect.

Even more troubling is the fact that the Director Defendants allowed Groupon to continue to

report its projected 2019 AEBITDA at $270 million ████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

    90.    Groupon first reported its $270 million AEBITDA figure for 2019 on February

13, 2019, during the Company's fourth quarter and year-end 2018 earnings conference call. On

the call, Randolfi reported that "our adjusted EBITDA expectation for the year is approximately $270 million." Randolfi repeatedly continued to make this claim throughout 2019, including the: (i) first quarter 2019 earnings conference call held on May 1, 2019; (ii) second quarter 2019 earnings conference call held on July 31, 2019; and (iii) third quarter 2019 earnings conference call held on November 5, 2019. However, by October 16-17, 2019, the Director Defendants ███████████████████████████████████████████████████████████████

███████████████████████████████████████

91.    On October 16-17, 2019, the Director Defendants participated in a Board meeting, which included a presentation on the Company's financial performance for the third quarter of 2019. In the presentation, the Board ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████. In particular, it stated:



Groupon-220-0000051.



Groupon-220-0000059; Groupon-220-0000061.



Groupon-220-0000062.

92. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████. In particular, it stated:



93.   At the very least, the Audit Committee Defendants reviewed and approved the release of this misleading earnings presentation, as they were required to do so under the Audit Committee Charter.

## THE TRUTH EMERGES

94.   On February 18, 2020, the Company issued its Annual Report on Form 10-K for the fiscal year ended December 31, 2019 (the "2019 Form 10-K") with the SEC, wherein the truth finally emerged that Groupon's AEBITDA for 2019 was only $227 million.  While the Company's actual AEBITDA for 2019 of $227 million ███████████████████

███████████████████████████████

███████████████████████████████

███████████████████

95.     On February 18-19, 2020, Groupon finally disclosed the failure of the Select program and the Company's plan to exit the Goods category.  However, Groupon's 2019 Form 10-K tellingly omitted any reference to the Select program by name, and instead vaguely referenced other "marketing activities" that offered discounts and free shipping:

> Our marketing activities also include elements that are not presented as Marketing on our consolidated statements of operations, such as order discounts and free shipping on qualifying merchandise sales.

96.     Groupon's 2019 Form 10-K also omitted the serious issues known to Director Defendants for months regarding the Select program, such as its over-indexing of the Goods category since mid-2019 and that Director Defendants ████████████████████████ ████████████████████████████████████████████████████ ███████████████ In addition, the Company's 2019 Form 10-K failed to disclose that the Director Defendants ██████████████████████████████████████████████████ ████████ The Company's 2019 Form 10-K was signed by defendants Williams, Thomas, Angelakis, Lefkofsky, Barris, Bass, Leonis, Wahl, and Ziegler.

97.     ██████████████████████████████████████████████████ ████████████████████████████████████████████████████ the investing public was first informed about these considerations during the fourth quarter and year-end 2019 earnings conference call held on February 19, 2020, with analysts and investors. During the call, in particular, defendant Williams disclosed:

> Our management team and board have been evaluating the role of Goods for some time.  Our fourth quarter performance and the challenges Goods has posed over the past few years have clarified our path forward.  Delivering on our growth strategy requires total focus on capturing the local experiences opportunity.  Over time, Goods has become a less meaningful driver of engagement and an increasingly inefficient use of our impressions.  It has effectively become a distraction in which we can no longer compete and that we cannot afford, as it has taken roughly 40% of our impressions to deliver roughly 20% of our gross profit.  This is the crux of our plan to exit Goods.

*     *     *

> Midway through the fourth quarter, it became clear, however, that we were seeing far fewer customers engaged with goods, and it impacted overall traffic to our site. The lower traffic ultimately impeded performance in all of our categories. This was particularly notable in November and affected our holiday peak period, when goods engagement has historically been a business driver.

98.     Defendant Williams' statements were false and misleading, as he omitted the fact that defendants had: (i) ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████

99.     In his February 18, 2020, letter to stockholders for the fourth quarter and year-end of 2019, defendant Williams also admitted that the Select program was: (i) disproportionately being used by customers to purchase merchandise inventory from the Company's Goods category; (ii) ineffective at directing its active customers to Groupon's profitable Local category; and (iii) that the Company would no longer seek new Select program members. In particular, defendant Williams wrote:

> Groupon Select added to our challenges in the quarter as it over-indexed to Goods, pressured margins and drove higher than anticipated customer acquisition costs. This brings us to the future of Select. The program's fourth quarter performance showed that it cannot provide the ROI needed for it to be a key priority for us at this time. Select's current features began appealing disproportionately to customers purchasing goods vs. those transacting on our local platform. As a result, we will continue to provide Select benefits to current members, but we will not pursue new enrollees for the program.

100.     The next day, defendant Thomas participated in Groupon's earnings conference call discussing the financial results for the fourth quarter and year-end of 2019 with analysts and investors. Defendant Thomas disclosed, for the first time, that Groupon's Select program was "over-indexing towards our Goods category *in the second half of 2019*:" In particular, she stated:

- 50 -

The Select program was expected to be net neutral to gross profit in the fourth quarter. But the program underperformed due to higher than anticipated customer acquisition costs and a lower than expected number of enrollees converting to paid members.

The program also began over-indexing towards our Goods category in the second half of 2019. This, coupled with results in the fourth quarter, led to our decision to discontinue new enrollments in our Select program[.]

101.     The Company's Select program started offering discounts for the Goods category on August 6, 2019, meaning that Groupon's Select program customers immediately took a disproportionate interest in using the Select program to purchase from the Company's Goods category instead of its more profitable Local category. More importantly, defendant Thomas' admission revealed that Groupon and defendants knew, or at the very least should have known if proper oversight was provided for the Select program, that the Select program was not in fact driving customer interest in the Company's profitable Local category and instead was disproportionately interesting customers that wanted to receive discounted offers for Groupon's Goods category.

102.     Defendants' failure to disclose that the Select program was over-indexing the Goods category since mid-2019 was a material omission in the Company's 2019 Form 10-K, which failed to even discuss the Select program by name. In addition, the omission of this known adverse trend, as well as the fact that ███████████████████████████ ██████, evidenced that the Thomas' prior statements regarding the 60% "increased purchas[ing] frequency" from the Select program "180 days post-enrollment" was materially misleading.

103.     Groupon's stock price dropped dramatically in light of these alarming and sudden disclosures. The Company's share price of $3.05 per share on February 18, 2020, plummeted to close at $1.70 per share on February 19, 2020. In one day, Groupon's stock price had lost $1.35 per share—a whopping 44%—and erased more than $765 million in market capitalization.

## DEFENDANTS' MISLEADING 2020 PROXY

**Defendants Issue a Misleading 2020 Proxy that Omitted Material Information as to the Select Program While Unjustly Rewarding the Officer Defendants**

104.    On April 28, 2020, Groupon filed its 2020 Proxy on behalf of the Board that included defendants Lefkofsky, Angelakis, Barris, Bass, Leonsis, Wahl, and Ziegler regarding the Company's upcoming annual meeting of stockholders.   In the 2020 Proxy, the Company revealed that defendants Williams and Thomas were granted PSU awards based on performance metrics for Groupon's Select program customers:

The threshold, target, and maximum performance levels for each of our performance metrics were as follows:

| Performance Level | Payout as a Percentage of Target (1) | Gross Profit ($) (2) | Groupon Select Customers | Diversity Recruiting (Candidate Slates) |
|---|---|---|---|---|
| Threshold | 25% | $1,225 million | 250,000 | 65% |
| Target | 100% | $1,310 million | 1,000,000 | 75% |
| Maximum | 200% | $1,400 million | 1,500,000 | 85% |

(1)    Linear interpolation is to be used to determine the number of PSUs earned with respect to a performance measure for performance between "threshold" and "target" or between "target" and "maximum," as applicable.

(2)    Actual achievement is provided on a constant currency (fx neutral) basis.

105.    Groupon's 2020 Proxy reported that defendants Williams and Thomas had satisfied these performance metrics, based, in part, on the 878,000 customers that signed up for the Select program during the year:

| Performance Metric (Each Weighted 1/3 of Total) | Actual 2019 Achievement | Payout as a Percentage of Target | Actual Payout (Adjusted for Weight) |
|---|---|---|---|
| Gross Profit | 1,189.8 million | 0% | 0.0% |
| Groupon Select Customers | 878,000 | 88% | 29.3% |
| Diversity Recruiting (Candidate Slates) | 88% | 200% | 66.7% |
| Total Performance Payout Percentage | | | 95.9% |

106.    Defendants Williams and Thomas were generously rewarded, in part, based on the performance metrics for the Company's Select customers, receiving 1,059,017 shares and 48,537 shares, respectively:

| Named Executive Officer | Target New PSUs for 2019 (number of shares) | Number of New PSUs Earned (number of shares) | Target Previously Committed PSUs for 2019 (number of shares) | Number of Previously Committed PSUs Earned (number of shares) (1) |
|---|---|---|---|---|
| Mr. Williams | 1,104,294 | 1,059,017 [2] | 367,432 | 352,367 |
| Ms. Thomas | 50,613 | 48,537 [3] | 17,100 | 16,398 |
| Mr. Drobny | 196,319 | 188,269 [4] | 96,786 | 92,817 |
| Mr. Krenzer | 276,074 | 264,754 [5] | 198,984 | 190,739 |
| Mr. Randolfi | 306,748 | - [6] | 83,269 | - [6] |

107.    Defendants knowingly or recklessly issued the Company's 2020 Proxy while omitting the material information that the Company's Select program was inefficient and unprofitable.  As discussed above, Groupon's decision to expand the Select program to include discounts for the Goods category materially and adversely impacted the Company's ability to operate at a profit.  From January 2019, the Director Defendants were aware that (i) ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

108.    Within months of offering discounts to its Goods category, which already operated with low profit margins, the Director Defendants were notified via a Board presentation in October 2019 that the Select program ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

109.    Although explicitly disclosed to the Board in December 2019, ███████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ This is consistent with defendant Williams' admission from December 2019, as discussed below, that the Company knew that the Select program was being used disproportionately by Groupon's customers, or "over-indexed" to purchase from its Goods category.

110.    To make matters even worse, Groupon's Board presentation from December 17, 2019, ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Groupon-220-0000400.   Regardless of this fact, Director Defendants recommended that defendants Williams and Thomas receive PSU awards based on the total enrollees in the Select program, which the Company reported at 878,000 for 2019. ██

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████.

### THE INDIVIDUAL DEFENDANTS KNEW OR SHOULD HAVE KNOWN THAT GROUPON'S 2019 AND 2020 PUBLIC STATEMENTS WERE FALSE AND MISLEADING

111.    The statements referenced above were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing: (i) ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



(viii) that the Select program started "over-indexing" the Goods category in the second half of 2019, immediately after the Company expanded the Select program to offer discounts and free shipping for the Goods category; and (ix) ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

## INSIDER SALES BY DEFENDANTS LEFKOFSKY AND BARRIS

112.    Rather than providing the market with correct information, the Insider Selling Defendants, defendants Lefkofsky and Barris, used their knowledge of Groupon's material, nonpublic information to sell their personal holdings while the Company's stock was artificially inflated.  As directors of Groupon, defendants Lefkofsky and Barris were privy to material, nonpublic information about the Company's true business health as discussed herein.

113.    While in possession of this knowledge, defendant Lefkofsky sold 1.5 million shares of his personally held Groupon stock for proceeds of $4.17 million and defendant Barris sold 210,124 shares of his personally held stock for proceeds of $490,954.73.  Defendant Lefkofsky and Barris' sales, which occurred in December 2019, were timed to maximize profit from Groupon's then artificially inflated stock price and before the Company disclosed the exit of its Goods category, the failure of its Select program, and that Groupon would substantially miss its expected AEBITDA for 2019 in February 2020.

## DAMAGES TO GROUPON

114.    As a result of the Individual Defendants' improprieties, Groupon disseminated improper, public statements concerning the Company's: (i) Goods category; (ii) the Select

program; and (iii) Groupon's reported AEBITDA for 2019. These improper statements have devastated Groupon's credibility as reflected by the Company's loss of over $765 million in market capitalization within a day of disclosure, representing a loss of nearly half (44%) of the Company's market capitalization.

115.    Groupon's performance issues also damaged its reputation within the business community and in the capital markets. In addition to price, Groupon's current and potential customers consider a company's ability to evaluate and report its financial figures, including the Company's AEBITDA, as well as a company's ability to accurately and correctly report the status of its business operations, such as Groupon's Goods category and the Select program. Businesses are less likely to award contracts to companies that are uncertain about their own financial conditions and business operations. Groupon's ability to raise equity capital or debt on favorable terms in the future is now impaired. In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to the Company.

116.    Further, as a direct and proximate result of the Individual Defendants' actions, Groupon has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

    (a)    costs incurred from defending and paying any settlement in the class action for violations of securities laws;

    (b)    costs incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to Groupon.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

117.   Plaintiff brings this action derivatively in the right and for the benefit of Groupon to redress injuries suffered, and to be suffered, by Groupon as a direct result of violation of securities law, breach of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Groupon is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

118.   Plaintiff will adequately and fairly represent the interests of Groupon in enforcing and prosecuting its rights.

119.   Plaintiff was a stockholder of Groupon at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Groupon stockholder.

120.   The current Board of Groupon consists of the following seven individuals: Leonsis, Lefkofsky, Barris, Bass, and Wahl, and nondefendant Valerie Mosley and Helen Vaid. Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because Defendants Leonsis, Lefkofsky, Barris, Bass, and Wahl Face a Substantial Likelihood of Liability for False and Misleading Statements, Such as the 2020 Proxy**

121.   As alleged above, defendants Leonsis, Lefkofsky, Barris, Bass, and Wahl breached their fiduciary duties of loyalty by making and/or allowing improper and false statements in the Company's press releases, public statements, and SEC filings regarding: (i) the Company's Goods category; (ii) the Select program; (iii) and Groupon's AEBITDA for 2019.

122.   Specifically, defendants Leonsis, Lefkofsky, Barris, Bass, and Wahl offered or allowed misleading and false statements, while failing to disclose the following material information: (i) ███████████████████████████████████████████

- 57 -

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ (vii) that the

Select program started "over-indexing" the Goods category in the second half of 2019, immediately after the Company expanded the Select program to offer discounts and free shipping for the Goods category; and (viii) ████████████████████████████

███████████████████████

123.    In addition, defendants Leonis, Lefkofsky, Barris, Bass, and Wahl issued the misleading Proxy 2020 statement, which omitted material information regarding the ineffectiveness of the Select program, such as ████████████████████ and its "over-indexing" of Goods category, while recommending to award defendants Williams and Thomas with PSU awards connected to the Select program. Defendants Leonis, Lefkofsky, Barris, Bass, and Wahl similarly issued and signed the Company's 2019 Form 10-K that omitted material information regarding the failure of Groupon's Select program and ████████████████████

███████████████████

**Demand Is Excused Because Defendants Leonis, Lefkofsky, Barris, Bass, and Wahl Face a Substantial Likelihood of Liability for Their Failure to Adequately Inform Themselves about the Company's Goods Category, Select Program, and AEBITDA for 2019**

124.    As alleged above, defendants Leonis, Lefkofsky, Barris, Bass, and Wahl breached their fiduciary duties of loyalty by failing to provide proper oversight over the Company's business operations, such as: (i) its Goods category; (ii) its Select program; and (iii)

Groupon's internal controls for its financial disclosures, including the Company's reported AEBITDA for 2019.  If defendants Leonis, Lefkofsky, Barris, Bass, and Wahl had provided adequate oversight on Groupon's business operations, the Company would not have expanded the Select program to its Goods category, as defendants Leonis, Lefkofsky, Barris, Bass, and Wahl knew that ████████████████████████████████████ Defendants Leonis, Lefkofsky, Barris, Bass, and Wahl also insufficiently monitored and informed themselves as to the reported AEBITDA for 2019 of $270 million that provided to the investing public in November 2019, ████████████████████████████████

████████████████████.  The Section 220 books and records production and public record are both devoid of any reason that would justify expanding the Select program to Groupon's Goods category or ████████████████████████████████████

### Demand Is Excused Because Defendant Bass Faces a Substantial Likelihood of Liability for His Misconduct

125.    Defendant Bass, as a member of the Audit Committee throughout 2019 and 2020, reviewed and approved the improper statements and earnings guidance.  The Audit Committee's Charter provides that the Audit Committee is responsible for compliance with accounting, legal, and regulatory requirements.  Thus, defendant Bass was responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls.  Moreover, defendant Bass reviewed and approved the improper press releases made to the public.  Despite his knowledge or reckless disregard, defendant Bass caused these improper statements.  Accordingly, defendant Bass breached his fiduciary duty of loyalty because he participated in the wrongdoing described herein.  Thus, defendant Bass faces a substantial likelihood of liability for his breach of fiduciary duties so any demand upon him is futile.

**Demand Is Excused Because Defendants Lefkofsky and Barris Face a Substantial Likelihood of Liability for Engaging in Insider Trading**

126.    Defendants Lefkofsky and Barris sold Groupon stock under highly suspicious circumstances.   As directors, defendants Lefkofsky and Barris possessed material, nonpublic Company information and used that information to benefit themselves.   Defendants Lefkofsky and Barris sold stock based on this knowledge of material, nonpublic Company information regarding the Company's: (i) Goods category; (ii) the Select program; and (iii) ███████████ ████████████████████ ██, and the impending decrease in the value of their holdings of Groupon.    Accordingly, defendants Lefkofsky and Barris face a substantial likelihood of liability for breach of their fiduciary duty of loyalty.   Any demand upon defendants Lefkofsky and Barris is futile.

127.    Any suit by the current directors of Groupon to remedy these wrongs would expose defendants Thomas and Williams to liability for violations of the federal securities laws in the pending securities class action, and would result in civil actions being filed against one or more of the other Individual Defendants.   The securities class action alleges violations of sections 10(b) and 20(a) of the Exchange Act.   If the Board elects for the Company to press forward with its right of action against defendants Thomas and Williams in this action, then Groupon's efforts would compromise its defense of the securities class action.   Accordingly, demand on the Board is excused.

## COUNT I

### Against Defendants for Violation of Section 14(a) of the Exchange Act

128.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

129.   SEC Rule 14a-9, promulgated pursuant to section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. §240.14a-9.

130.   Defendants Barris, Bass, Lefkofsky, Leonis, Wahl, and Angelakis issued the misleading 2020 Proxy that omitted material information.  Specifically, the Company's 2020 Proxy violated section 14(a) and SEC Rule 14a-9, promulgated thereunder, because the misleading 2020 Proxy: (i) omitted material information regarding the ineffectiveness of the Select program, such as ██████████████████████ and its "over-indexing" of the Goods category, while recommending to award defendants Williams and Thomas with PSU awards ██████████████████████████████████████████████; and (ii) failed to disclose that each of the non-employee directors were interested in their own grants of discretionary compensation.

131.   In the exercise of reasonable care, defendants Barris, Bass, Lefkofsky, Leonis, Wahl, and Angelakis should have known that the statements contained in the 2020 Proxy were materially false and misleading.

132.   The misrepresentations and omissions in the 2020 Proxy were material to Company stockholders in voting.  The 2020 Proxy solicited stockholder votes for: (i) director nominees; (ii) executive compensation; and (iii) stock issuance in connection with Select program to Officer Defendants in breach of their fiduciary duties.

133.   The 2020 Proxy was an essential link in the accomplishment of the continuation of Individual Defendants' continued violation of their fiduciary duties.

134.   The Company was damaged as a result of defendants Barris, Bass, Lefkofsky, Leonis, Wahl, and Angelakis' material misrepresentations and omissions in the 2020 Proxy.

<u>COUNT II</u>

**Against the Individual Defendants for Breach of Fiduciary Duty**

135.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

136.   The Individual Defendants owed and owe Groupon fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Groupon the highest obligation of care and loyalty.

137.   The Individual Defendants and each of them, violated and breached their fiduciary duties.

138.   The Officer Defendants either knew, were reckless, or were grossly negligent in making or allowing misleading and deceptive statements to be made regarding: (i) Groupon's Goods category; (ii) the Select program; and (iii) the Company's 2019 AEBITDA.  The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing:  (i) ██████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

▓▓▓▓▓▓▓▓▓▓▓▓ (viii) that the Select program started "over-indexing" the Goods category in the second half of 2019, immediately after the Company expanded the Select program to offer discounts and free shipping for the Goods category; and (ix) ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

139.    Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

140.    The Director Defendants, as directors of the Company, owed Groupon the highest duty of loyalty.  The Director Defendants breached their duty of loyalty by recklessly permitting the misleading statements made by the Company regarding: (i) the Goods category; (ii) the Select program; and (iii) Groupon's reported AEBITDA for 2019.  The Director Defendants knew or were reckless in not knowing that: (i) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓ (viii) that the Select program started "over-indexing" the Goods category in the second half of 2019, immediately after the Company expanded the Select program to offer discounts and free shipping for the Goods category; and (ix) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

141.    In addition, the Director Defendants issued the misleading 2020 Proxy statement, which omitted material information regarding the ineffectiveness of the Select program, such as ██████████████████████████ and its "over-indexing" of the Goods category, while recommending to award the Officer Defendants with PSU awards connected to the Select program.

142.    Accordingly, these Director Defendants breached their duty of loyalty to the Company.

143.    The Audit Committee Defendants breached their fiduciary duty of loyalty by approving the statements described herein that were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions.  The Audit Committee Defendants completely and utterly failed in their duty of oversight, and failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

144.    The Insider Selling Defendants breached their duty of loyalty by selling Groupon stock on the basis of the knowledge of the improper information described above before that information was revealed to the Company's stockholders.  The information described above was material, nonpublic information concerning the Company's future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Groupon common stock.

145.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Groupon has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

146.    Plaintiff, on behalf of Groupon, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Waste of Corporate Assets

147.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

148.   As a result of the Individual Defendants' failure to conduct proper supervision over the Company's business operations, including its Goods category and Select program, and Groupon's public statements regarding the same, the Individual Defendants have caused Groupon to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty, including the wasteful award of PSU and director compensation from the 2020 Proxy.

149.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

150.   Plaintiff, on behalf of Groupon, has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Unjust Enrichment

151.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

152.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Groupon.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Groupon.

153.   The Insider Selling Defendants sold over $4.6 million worth of Groupon stock while in possession of material, nonpublic information that artificially inflated the price of

Groupon stock. As a result, the Insider Selling Defendants profited from their misconduct and were unjustly enriched through their exploitation of material and adverse inside information.

154.    Plaintiff, as a stockholder and representative of Groupon, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches, including the unjust award of PSU and director compensation from the 2020 Proxy.

155.    Plaintiff, on behalf of Groupon, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Groupon, demands judgment as follows:

A.    Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' violation of securities law, breach of fiduciary duty, waste of corporate assets, and unjust enrichment;

B.    Directing Groupon to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Groupon and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.    a proposal to strengthen the Company's controls over financial reporting regarding material information regarding Groupon's business operations and financial performance;

2.      a proposal to strengthen Groupon's oversight of its disclosure procedures, including, without limitation, the Company's business operations and financial performance;

3.      a provision to enhance the prevention of insider selling;

4.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

5.      a provision to permit the stockholders of Groupon to nominate at least three candidates for election to the Board;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of the Insider Selling Defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Groupon has an effective remedy;

D.      Awarding to Groupon restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants, including all ill-gotten gains from Insider Selling Defendants and the PSU awards wrongly given to Officer Defendants.

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

September 9, 2021

**COOCH AND TAYLOR, P.A.**

/s/ *Blake A. Bennett*
Blake A. Bennett (#5133)
The Nemours Building
1007 N. Orange Street, Suite 1120
Wilmington, DE 19801
Telephone: (302) 984-3800
Facsimile: (302) 984-3939
E-mail: bbennett@coochtaylor.com

**OF COUNSEL:**

*Attorneys for Plaintiff*

**ROBBINS LLP**
Brian J. Robbins
Kevin A. Seely
Trevor S. Locko
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
        kseely@robbinsllp.com
        tlocko@robbinsllp.com